# EXHIBIT B

## (Sentencing  Hearing Transcript 7/11/01 )

000444A.TXT

1

1              IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF HAWAII

3

4    UNITED STATES OF AMERICA,        )  CR 00-00444 SOM 01
                                      )
5                      Plaintiff,     )  Honolulu, Hawaii
          vs.                         )  July 11, 2001
6                                     )  10:00 A.M.
     PULEMAU FAITAU,                  )
7                                     )  Sentencing as to
                       Defendant.     )  Counts 1 and 3 of the
8                                     )  Indictment; Defendant's
                                      )  Motion for Downward
9    _____ )  Departure

10
                      TRANSCRIPT OF PROCEEDINGS
11            BEFORE THE HONORABLE SUSAN OKI MOLLWAY
                   UNITED STATES DISTRICT JUDGE
12
     APPEARANCES:
13
     For the Government:          TRACY A. HINO, ESQ.
14                                Office of the U.S. Attorney
                                  PJKK Federal Bldg.
15                                300 Ala Moana Blvd., Ste. 6100
                                  Honolulu, HI 96850
16
     For the Defendant:           RICHARD T. PAFUNDI, ESQ.
17                                Hawaiki Twr.
                                  88 Piikoi St., Ste. 404
18                                Honolulu, HI 96814

19   Also Present:                EILEEN K. TOKUNAGA
                                  U.S. Probation Office
20                                PJKK Federal Building
                                  300 Ala Moana Blvd., Ste. C126
21                                Honolulu, HI 96850

22   Official Court Reporter:     Debra Kekuna Chun, CSR, RPR
                                  United States District Court
23                                300 Ala Moana Blvd., Ste. C285
                                  Honolulu, HI 96850
24                                (808) 534-0667

25   Proceedings recorded by machine shorthand, transcript
     produced with computer-aided transcription (CAT).

2

1    WEDNESDAY, JULY 11, 2001          10:06 O'CLOCK A.M.



EXHIBIT _____

000444A.TXT

2        THE CLERK:  Criminal Number 00-00444 SOM, United

3    States of America versus, defendant 1, Pulemau Faitau.

4    This case is called for Sentencing as to Counts 1 and 3 of

5    the Indictment.

6        MR. HINO:  Good morning, Your Honor.  Tracy Hino,

7    Assistant U.S. Attorney.

8        MR. PAFUNDI:  Good morning, Your Honor.  Rich

9    Pafundi, appearing on behalf of Pulemau Faitau.  He's also

10   present.

11       THE COURT:  Okay.  Mr. Faitau, I know on Monday I

12   had some concern about whether you were able to proceed.

13   What is the situation today?

14       THE DEFENDANT:  I'm okay.

15       THE COURT:  You're okay?

16       THE DEFENDANT:  Yes.

17       THE COURT:  Did you get the medication that you

18   needed?

19       THE DEFENDANT:  Yes, I took 'em.  They gave me

20   it.

21       THE COURT:  Then let me make sure you did -- I

22   forgot if I asked you this last time.  You did have a

23   chance to review the Presentence Investigation Report;

24   right?

25       THE DEFENDANT:  Yes.

3

1       THE COURT:  And I think last time you said you

2   did have some objections; is that correct?

3       THE DEFENDANT:  Yes.

4       THE COURT:  Okay.  Why don't you tell me what

5   those objections are since what I have is a sentencing

000444A.TXT

6    statement that says you don't have objections.  So what are

7    your objections?

8            THE DEFENDANT:  The amount.

9            THE COURT:  You have to tell me the paragraph

10   number that you're objecting to.

11           THE DEFENDANT:  15.  Page 15, 49.

12           THE COURT:  I'm having a little difficulty

13   hearing you.

14           THE DEFENDANT:  Page 15, 49.

15           THE COURT:  Page 15, paragraph 49.

16           THE DEFENDANT:  Yes, ma'am.

17           THE COURT:  Okay.  And what is the problem with

18   paragraph 49?

19           THE DEFENDANT:  It says that I was sentenced on

20   7/2 in '93 for promotion for the -- in the state.

21           THE COURT:  Yes.

22           THE DEFENDANT:  But I wasn't sentenced on -- all

23   my prior sentence was running concurrent in the state, and

24   I was sentenced on 8/19/93 every one of them.

25           THE COURT:  Okay.  So the date is wrong?  It

4

1    should be 8/19/93?

2            THE DEFENDANT:  I was never sentenced twice in

3    the state.  Only one time I went to prison.

4            THE COURT:  Hold on.

5            MR. HINO:  Your Honor, I can clarify that a

6    little bit, too, if I could.

7            THE COURT:  Okay.

8            MR. HINO:  And Mr. Faitau and Mr. Pafundi can

9    correct me if I'm wrong.

Page 3

000444A.TXT

10        There's a common misconception among state
11   prisoners that, if they are sentenced on the same date in
12   state court, then the provisions of the career offender
13   guideline do not appear.  And I think that's what the
14   defendant is arguing:  that he was sentenced, I think,
15   probably for, like, at least half a dozen, maybe eight or
16   nine, felony offenses at the same time, but he believes
17   that those should not be counted as separate convictions.
18        THE COURT:  Okay.  But hold on.  Let's see if the
19   sentencing day in any event is correct or not.
20        I mean I know I studied these to see -- okay.
21   Because, if you look at paragraph 41, he may be correct
22   that the sentencing date for 92-1897 should read 8/19/93?
23        THE DEFENDANT:  Yes.
24        THE COURT:  And the same for -- in paragraph 42
25   he was sentenced in case number 92-3624, and that sentence

5

1   also appears to have been on August 19, '93, as opposed to
2   July 2d, '93.
3        And again in paragraph 38 he was sentenced in
4   93-1434 on August 19, '93.  So, putting aside the issue of
5   the effect of all of these sentences happening on the same
6   day, which I know you're worried about, Mr. Hino, it does
7   seem that the date is incorrectly reported.  So any
8   position on correcting take date, Mr. Hino?
9        MR. HINO:  I agree, Your Honor.  It appears that
10   the date's incorrect.
11        THE COURT:  Then I'm going to sustain that
12   objection, and the date in paragraph 49 will be corrected.
13   Where it refers to July 2d, 1993, the date should be

Page 4

000444A.TXT

14   corrected to be August 19, 1993.

15        Okay.  Any other objections?

16        THE DEFENDANT:  No.

17        THE COURT:  Okay.  Then you can be seated.

18        THE DEFENDANT:  Thank you.

19        THE COURT:  And let me check with Mr. Hino.

20        Mr. Hino, I did get a sentencing statement from

21   the government saying there are no objections.  Is that the

22   case?

23        MR. HINO:  Your Honor, I think the defendant --

24   actually, Mr. -- I think Mr. Pafundi should speak for him,

25   but I think he is objecting to the fact that the offenses

6

1   are being counted.

2        THE COURT:  Well, okay.  But right now -- Mr.

3   Pafundi, are there other objections?  I thought that was

4   just a correction of the date.

5        MR. PAFUNDI:  It would appear to be just a

6   correction of the date.  However, I did check with the PO

7   previously about this issue, and it appeared that in the

8   PO's opinion and as a matter of law that, even though he

9   was sentenced only once, because it was for multiple

10  felonies in different cases which were all consolidated,

11  all these prior felonies count enough so that he has this

12  career offender designation.  My only concern is now with

13  the change of the date whether or not that would have any

14  impact whatsoever on his career offender designation.

15        THE COURT:  I can't see why it would.  The

16  guidelines give us some pretty express statements on how to

17  count prior offenses.

Page 5

000444A.TXT
18          MR. PAFUNDI:  Because the way the report is then
19   written actually mentions in the report --
20          THE COURT:  Can you speak into the mike.
21          MR. PAFUNDI:  I'm sorry, Your Honor.  Paragraph
22   49 does state, "And he has, quote, at least two prior
23   felony convictions for felony controlled substances."
24          Now, if it was referring to actually two prior
25   felony convictions, then it would appear that career

                                                          7

1    offender designation applies.  If it was referring to two
2    prior sentences for felony convictions --
3           THE COURT:  Well, it refers to two prior felony
4    convictions, not to two --
5           MR. PAFUNDI:  Prior sentences.
6           THE COURT:  -- prior sentencing dates.  So we
7    have these different cases with different incidents that
8    appear to have resulted in different arrests, different
9    fact patterns, different situations.  They weren't at even
10   the same -- exact same location.  So let me understand if
11   the defendant is arguing, Mr. Pafundi, that the career
12   offender designation is incorrectly stated in the PSR or if
13   the defendant was only challenging the date that the
14   sentence was issued.
15          MR. PAFUNDI:  I'm kind of caught a little off
16   guard on this particular issue.  Perhaps I shouldn't be,
17   but I am.  If the PO was under the impression that he had
18   been sentenced both in July and in August and, therefore,
19   the career offender designation applies, then we have a
20   concern because he was not sentenced in July; he was only
21   sentenced in August.  If it doesn't make a difference --
                              Page 6

000444A.TXT

22    THE COURT:  I don't think -- well, it doesn't
23 make a difference -- the July 2d, 1993 date was the date
24 that he pled in some of these cases; he pled no contest.
25 So I think in writing up paragraph 49 just the wrong date

8

1 was picked up from the case summaries earlier because
2 July 2d is a date in which various proceedings occurred,
3 just the no-contest plea, not the sentence.  So I don't see
4 why there's a material effect of having picked up the wrong
5 date, and now we've corrected it.  But, if you are arguing
6 that that is a material change for purposes of calculating
7 his sentence, I need you to clarify the basis of your
8 position.
9    MR. PAFUNDI:  It would appear that because the
10 defendant was sentenced even on one date because of the
11 multitude of felonies for which he was sentenced for
12 involving different criminal numbers that he would still
13 fall under the career offender category, notwithstanding
14 the information that's been amended in the PSI.
15    THE COURT:  It does appear to me that way.  You
16 were arrested separately for these different events.
17 Sometimes you're arrested and there are multiple charges at
18 the same time and you might be in one case and, you know,
19 that might be a different situation.  But in this situation
20 where you had different case numbers addressing different
21 instances of criminal activity and you received separate
22 sentences, even though they all ran concurrently with
23 sentences imposed in other criminal numbers, that these are
24 separate convictions for purposes of determining whether
25 the defendant is a career offender for purposes of

000444A.TXT

9

1    calculating the appropriate guideline range.

2         So I take it the defendant has no more objections

3    to the Presentence Investigation Report?

4         MR. PAFUNDI:  None beyond which was raised by the

5    defendant himself as to the date.

6         THE COURT:  Okay.  Then before I turn back to Mr.

7    Hino, let me check on this.  Now, Mr. Faitau's criminal

8    history is detailed in this PSR, and I would like to get a

9    statement from him affirming the convictions on which the

10   PSR relies.  So, if I look back at the Special Information

11   that the government filed on December 26, 2000, listing the

12   eight prior felony drug convictions on which the government

13   based the Special Information, let me go through those with

14   Mr. Faitau to see if he is affirming or denying that indeed

15   he was convicted of these earlier crimes.

16        I'm not saying here -- just for the defendant's

17   benefit let me clarify.  I'm not asking you whether you're

18   saying you should have been found guilty or you should have

19   been sentenced.  I'm simply asking whether indeed you were

20   sentenced for these crimes or not.  So let me first check

21   with you with respect to -- if you want to follow along,

22   this might be easiest.

23        Looking at the PSR, paragraph 36 of the PSR

24   refers to case number 91-2600.  And you can see what this

25   case involved.  It involved an incident in May, on May 2d,

10

1    1990, in which some police officers saw you sitting in a

2    car around Kanunu and Makaloa streets.  And they searched

Page 8

000444A.TXT

3    you, and they found 14 plastic bags that had cocaine and

4    they also found cash, about $745.  And according to this

5    report you told them that you were selling the cocaine for

6    the owner of a convenience store that was nearby.  And you

7    were charged with promoting dangerous drugs in the second

8    degree, you pled no contest, and you were sentenced for

9    that.

10        Are you agreeing that indeed you were convicted

11   as the presence report says for this crime that I've

12   just described?

13        THE DEFENDANT:  Yes, ma'am.

14        MR. HINO:  Your Honor, can I say something?

15        THE COURT:  Yes.

16        MR. HINO:  My general practice is to ask the

17   defendant if he affirms the convictions at the change of

18   plea.  I'm just wondering if the minutes for the change of

19   plea here already reflect that the defendant affirmed the

20   prior convictions.

21        THE COURT:  Okay.

22        MR. HINO:  I mean we might have done it already.

23        THE COURT:  Okay.  You want to -- I'll have the

24   courtroom deputy check.

25        MR. HINO:  Okay.


                                                              11


1         (Discussion off the record.)

2         THE COURT:  He did.  I found it.  Paragraph 7 of

3    the PSR.  Mr. Hino, you must have followed your usual

4    practice and brought that up; so it was done.

5         Okay.  Thank you very much.

6         Okay.  Then I think I'm done for the moment with
                            Page 9

000444A.TXT

7   the defendant.  Let me turn over to Mr. Hino.  Mr. Hino, I

8   take it the government, as stated in its sentencing

9   statement, has no objections to the PSR.  Is that correct?

10         MR. HINO:  Yes, Your Honor.

11         THE COURT:  Then, as corrected in that one

12   paragraph, which was paragraph 49, I am adopting the PSR.

13   These will be my findings for sentencing purposes, and this

14   document will be filed under seal but available to

15   counsel.  Also to be filed under seal but not available to

16   counsel is the probation office's recommendation to the

17   court.

18         There being no disputes, I will now announce my

19   findings on the sentencing provisions that apply.  The

20   total offense level here is 34.  The criminal history

21   category is 6.  The following provisions apply to this

22   case:  As to each of counts 1 and 3, by statute there is a

23   10-year mandatory minimum period in custody.  The maximum

24   is life.  By guidelines, before we take into account any

25   possible departures the guideline range is 262 to 327

12

1   months as the period in custody.  This defendant is not

2   eligible for probation.  Supervised release as to each of

3   counts 1 and 3 is a maximum of eight years, and the

4   guidelines track the statute in that regard.

5         The maximum fine by statute as to each of counts

6   1 and 3 is $4 million.  The guideline range for a fine is

7   $17,500 to $4 million.  Community restitution cannot exceed

8   any fine imposed.  There is a special assessment of $100

9   for each of counts 1 and 3 for a total special assessment

10   of $200.

000444A.TXT

11          Mr. Pafundi, is there any objection to those
12     findings?
13          MR. PAFUNDI:  No objection, Your Honor, except
14     that it's apparent that the defendant doesn't have the
15     funds to pay the fines within the guideline range.
16          THE COURT:  Mr. -- I'll be addressing that
17     shortly.
18          Mr. Hino, does the government have any objections
19     to the findings I've just put on the record?
20          MR. HINO:  No, Your Honor.
21          THE COURT:  Okay.  Then let me turn to the
22     motions for downward departure.  I'll first take up the
23     government's motion for downward departure based on
24     substantial assistance.  Mr. Hino.
25          MR. HINO:  Yes, Your Honor.  The defendant

                                                      13

1      cooperated with the government in this case.  He expressed
2      great fear and concern for his personal safety both before,
3      during, and after the drug transaction that he participated
4      in.  And, as a result of his cooperation, we did arrest and
5      indict his longtime source -- I refer to him as Benjamin
6      Kaulia in our motion for downward departure.  That should
7      be Abraham Kaulia.  I also erroneously mentioned that the
8      defendant would still be subject to a 120-month mandatory
9      minimum.  That, of course, is incorrect because the
10     government is moving to depart here.
11          But, in addition to participating directly in the
12     case against Mr. Kaulia, the defendant also suffered some
13     hardship as well because we had to transfer him to Kern
14     County and put him in protective custody in various

000444A.TXT

15  locations.  And I know that was a little bit of a hardship
16  to the defendant being segregated from the regular
17  population.
18          So we're requesting, Your Honor, that the
19  defendant receive a six-level downward departure to a total
20  adjusted offense level of 28 with an imprisonment range of
21  140 to 175 months.  And I might add, Your Honor, that is a
22  very generous departure range.  However, both Mr. Gronna,
23  the previous attorney on this case, and Mr. Pafundi did
24  really advocate strongly on behalf of the defendant and
25  point out all the different facets of the defendant's

                                                        14

1  cooperation; so that's our recommendation.
2          THE COURT:  Mr. Pafundi, you want to first
3  address the government's motion.  You can wrap in the
4  argument on the defendant's motion for downward departure,
5  and then I'll let Mr. Hino respond in both respects.
6          MR. PAFUNDI:  Yes, Your Honor.  We do thank the
7  government for being generous in terms of its
8  recommendation to the court.  262-year mandatory minimum is
9  just an enormous amount of time.
10          THE COURT:  262 months.
11          MR. PAFUNDI:  I'm sorry.  262 months.  It's
12  almost the same thing, if you're doing the time.  But
13  140-month minimum term is, while still being a large amount
14  of time which will take a substantial chunk out of Mr.
15  Faitau's life, it's still a lot better, obviously, than the
16  262-month mandatory minimum.  Of course, Mr. Faitau would
17  like the government to even recommend less than that, but
18  we can't force them to do that beyond which they've already
                         Page 12

000444A.TXT

19    done and recommended; so he would ask respectfully that
20    this court sentence him to the very lowest end of the
21    guideline range recommended by the government, which is 140
22    months.
23            In addition to -- well, his cooperation has led
24    to the arrest, indictment, and conviction of Mr. Kaulia.
25    And he did actually engage in transactions which put his

                                                            15

1    life in danger, and notwithstanding the risk he proceeded
2    anyway and was successful in his effort.
3            Now, the basis for the downward departure being
4    cooperation of the defendant against codefendants or other
5    individuals is a recognized one, and to the extent he can
6    be given full credit for that cooperation and the court
7    sentencing him to the absolute minimum, we would appreciate
8    that.
9            THE COURT:  Okay.  Anything further on the
10    defendant's own motion?
11            MR. PAFUNDI:  Your Honor, the defendant actually
12    filed that motion for a downward departure on his own.
13            THE COURT:  I know.  I'm a little concerned about
14    that.  You see, he may not understand that, if he has
15    counsel, he should speak through counsel.  I can't have
16    several people speaking on behalf of the defendant because
17    you may present different arguments at different times, and
18    I need to have a unified voice from the defense.
19            MR. PAFUNDI:  I guess the defendant can address
20    the court when he does his colloquy with the court at time
21    of sentencing and incorporate that in his request for the
22    downward departure motion being granted.
                        Page 13

000444A.TXT

23    THE COURT:  Okay.  So let me go off the record

24    and let you consult with your client to make sure that that

25    procedure is acceptable.  I don't want a problem farther

                                                          16

1    down the line.

2         Is the motion then being withdrawn; although, the

3    same issues are being submitted for my consideration for

4    purposes of determining where in the guideline range his

5    sentence should fall?  That sounds to me like what you're

6    suggesting.  I would like it if you would take the time to

7    consult and make sure that, having consulted, that that is

8    the position being taken.  So let's go off the record for a

9    minute

10       (Counsel and defendant conferring.)

11        MR. PAFUNDI:  Yes, Your Honor.  We did have an

12   opportunity to confer about the issues.  We're not in a

13   position to withdraw the motion entirely in terms of the

14   motion for downward departure, but I will speak on behalf

15   of the defendant on behalf of his motion for downward

16   departure.

17        THE COURT:  Okay.  So are you adopting all or any

18   part of the motion as if it had been submitted by counsel?

19        MR. PAFUNDI:  For purposes of this hearing, yes.

20        THE COURT:  Okay.  Are you adopting it all, or

21   are you adopting only part of it?

22        MR. PAFUNDI:  I will adopt all of it.

23        THE COURT:  All right.  Then go ahead and argue

24   the motion.

25        MR. PAFUNDI:  Your Honor, in that -- and I

                          Page 14

000444A.TXT

17

1   brought this up to Your Honor's attention Monday.  Mr.
2   Faitau has suffered the unusual circumstances of getting
3   his throat slashed while in custody.  We're requesting some
4   additional mercy from the court in addition to any amount
5   of time that this court has or will be imposing on the
6   defendant.  In that you've already taken some of the
7   government's recommendations into consideration for
8   reduction of his proposed sentence, we ask that the court
9   take additional time off his proposed sentence in light of
10  the fact that he, like I said, he's been hospitalized with
11  approximately 80 stitches to his neck and facial area while
12  in custody, while sleeping, while in Kern County.
13          Now, this is serious stuff.  He was the victim of
14  an attempted murder.  And Tracy Hino has indicated to me
15  that Barry Klein, an attorney with the Bakersfield
16  prosecutor's office or the San Bernardino prosecutor's
17  office -- we're not sure which one yet -- has requested
18  that Mr. Faitau come down and testify as a victim in the
19  attempted murder trial of another defendant.  This trial
20  was set for July 23d, 2001.
21          So nobody really expects, I guess, if you're
22  going to be dealing drugs and sentenced to incarceration
23  for your offenses, that you would suffer the additional
24  punishment of being assaulted to the extent that your life
25  is endangered while in the custody of prison officials.  So

18

1   to the extent the court can take into consideration the
2   brutality that he's experienced we would ask that the court

Page 15

000444A.TXT

 3    grant his motion for downward departure, cut the time in

 4    half which would ordinarily be considered by this court, in

 5    light of the unusual circumstances that he almost got his

 6    life taken away from him.

 7          THE COURT:  Let me ask a couple of questions.

 8    I'm assuming that the attack is unrelated to any assistance

 9    that he has been providing the government.  Am I correct?

10          MR. PAFUNDI:  That's correct, Your Honor.

11          THE COURT:  And this is a horrifying event, and I

12    understand it took place while he was asleep; so, you know,

13    he was quite defenseless actually when it happened.  Apart

14    from what must have been the tremendous pain and horror of

15    the occurrence, is there a continuing medical issue that

16    will make his serving time from now more difficult in light

17    of some medical issue that's residual?

18          MR. PAFUNDI:  As Your Honor was informed on

19    Monday, he is seeing a psychiatrist as a result of this

20    episode.  He is unable to go to sleep at night without the

21    assistance of medication.  As long as he's locked up in

22    another room with another person for the balance of his

23    prison term, he will have this continuing fear of

24    additional assaults.  So it's a very uncomfortable

25    experience for Mr. Faitau to be -- and he doesn't want to

                                                          19

 1    be locked up in protective custody either, in the hole, so

 2    to speak, segregated from the rest of the population.  So

 3    this is going to be an ongoing trauma.

 4          THE COURT:  Is there a civil action relating to

 5    this that is pending?

 6          MR. PAFUNDI:  Well, I presume there will be a

                          Page 16

000444A.TXT

 7  civil action.  But, as of now, no, but I suspect that there

 8  will be soon.

 9        THE COURT:  Okay.

10        MR. PAFUNDI:  And to the extent that he has been

11  victimized he is cooperating on his own in matters

12  unrelated to and independent of the actual transactions

13  involved herein where he's before you at sentencing.  He's

14  cooperating with another governmental agency to prosecute

15  another defendant engaged in a far more significant

16  offense -- attempted murder -- than what he's here in court

17  on at sentencing.  So his cooperation will be continuing;

18  so we would ask that, although he's doing it for his

19  benefit, he's being compelled actually to testify as a

20  witness, but he's doing so voluntarily.

21        And, of course, you testify against a codefendant

22  or a defendant in prison, that leads to a whole 'nother

23  panoply of concerns that one should have.  I understand

24  that the defendant in this case -- although, I don't know

25  his name -- was Mexican apparently.  And I'm sure the

                                                      20

 1  person who slashed his throat is not the only Mexican in

 2  the facility; so there's going to be ongoing safety

 3  concerns throughout his period of incarceration.  So --

 4        THE COURT:  Is that it?

 5        MR. PAFUNDI:  That's it for my representation,

 6  yes, Your Honor.

 7        THE COURT:  Mr. Hino.

 8        MR. HINO:  Your Honor, the defendant raises a

 9  couple issues.  One of the issues that he raises is delay.

10  And I might point out that the only delay that's occurred

Page 17

000444A.TXT

11    in this case has been, you know, at the concurrence of

12    defense counsel.

13            THE COURT:  I think there was a change in

14    counsel, too, that required some delay.

15            MR. HINO:  Right.  And then also Mr. -- yeah, Mr.

16    Pafundi also asked for a continuance as well.

17            THE COURT:  Yes.  A continuance of the

18    sentencing, yes.

19            MR. HINO:  As far as the defendant's -- as far as

20    his incarceration, you know, the defendant requested

21    protective custody; so we did try to accommodate the

22    defendant in that way.  And we have already given the

23    defendant or factored in that as part of his motion for

24    downward departure -- the government's motion for downward

25    departure the fact that, you know, as part of his

21

1    cooperation he had to endure -- I just can't think of the

2    word at the moment, you know, the segregated type

3    confinement; so the government did consider that.

4            As far as the possible psychological condition

5    that he has, the burden is on the defendant to show the

6    existence of extraordinary circumstances that would warrant

7    his motion for downward departure.  He hasn't alleged or

8    set forth anything to reach that level.  So I would argue,

9    Your Honor, that the court consider some of the issues that

10    the defendant has raised in determining where he falls on

11    the guideline range but not to grant a further departure

12    from what the government has already recommended.  We've

13    already recommended a real big departure.  He was looking

14    at possibly 30 years if he went to trial approximately,

Page 18

000444A.TXT

15   more than 20 years if he pled guilty, and we've got him
16   down now to a little more than 10 years.  And there's also
17   a chance of further cooperation and a Rule 35 with the
18   defendant; so he's in a very good position.
19          So just to summarize I'd ask the court to deny
20   the defendant's motion for downward departure but to
21   consider considering some of those issues for his guideline
22   range, where he falls in the guideline range, the 140- to
23   175-month that we've recommended.
24          THE COURT:  Okay.  Anything more from the
25   defense?

                                                              22

1          MR. PAFUNDI:  Not from me, Your Honor.
2          THE COURT:  Then I'm going to grant the
3    government's motion for downward departure based on
4    substantial assistance.  I will depart downward six levels,
5    which will bring me to a level 28.  With a criminal history
6    category of 6, the range for custody is 140 to 175 months.
7    And supervised release may then be less than what was
8    otherwise the guideline range of eight years, which had
9    been taken -- the guideline range of eight years for
10   supervised release.
11          But I will deny the defendant's motion for
12   downward departure.  As I understand it, one ground was the
13   alleged delay, but I really don't see the government's
14   delay here.  There was a change of counsel.  There was also
15   a request to continue this from last month to this month by
16   the defense.
17          And I suppose the most -- the strongest argument
18   that was raised by the defendant in the motion that he

000444A.TXT

19  brought for downward departure is the hardship of pretrial

20  confinement, which included, obviously, this attack, a very

21  horrible attack.  Except for the attack, the hardship

22  conditions that he's had are pretty much the same as all

23  the pretrial detainees from this district.  The problem

24  with using the attack as a basis for downward departure to

25  me is that I really don't have a great deal of information

23

1  about it.  I mean in particular I don't have a great deal

2  of information about the medical impact.  I don't have any

3  indication as to how long his doctor is predicting that

4  either the physical or psychiatric treatment might have to

5  continue or as to how extensive that will be.  I realize

6  that the attack itself is -- was horrible, beyond

7  imagination, but that attack was about five months ago, and

8  I don't have a whole lot of information from this point

9  forward about what kinds of continuing effects there are.

10  And so I don't at this point feel that I have the ground to

11  grant the defendant's motion for downward departure, but I

12  certainly will take that into account in determining where

13  in the range of 140 to 175 months this defendant's sentence

14  should fall.

15        I also will note that the defendant may have a

16  civil remedy for that attack.

17        Okay.  Having done that, let me then turn this

18  back to you, Mr. Pafundi, for argument on where in the

19  range this sentence should fall.  I will say that I am

20  inclined to go to the low end of the guideline range.  The

21  government has described the substantial assistance that

22  this defendant has provided, and you also have given me

Page 20

000444A.TXT

23    detail on that.  And, given the nature of the assistance,

24    the results to the government, and the danger that the

25    defendant has put himself in, I do think that not only was

24

1    the downward departure based on substantial assistance

2    warranted but the low end of the guideline range and that

3    even more because of the hardships that the defendant has

4    had to endure, including especially the attack on him.

5         So those were the -- I mean you heard me address

6    those on the motions for downward departure, but also

7    wrapping that into the guideline range issue I do think

8    that the 140-month, which is the bottom-of-the-range

9    placement is appropriate here.  But let me hear from you on

10   that, and, when you're done, if Mr. Faitau would like to

11   speak, I'd be happy to hear from him.

12        MR. PAFUNDI:  Thank you, Your Honor.  But I

13   believe you are fully aware of my recommendation to the

14   court, and you apparently have taken all of the arguments

15   into consideration; so I would like to have the defendant

16   address Your Honor at this time.

17        THE COURT:  Okay.  Thank you.

18        Mr. Faitau, would you like to say anything?

19        THE DEFENDANT:  Yeah.

20        THE COURT:  Okay.  Can you speak right into the

21   mike.

22        THE DEFENDANT:  I'd just like to say I'm sorry,

23   and I take full responsibility for my action.  There were

24   things that I done, and I accept whatever punishment I get.

25   But I am very sorry for my action, and I sorry for taking

Page 21

000444A.TXT

25

1   too much time of you guys.  That's all.

2          THE COURT:  Okay.  Thank you very much.

3          Mr. Hino.

4          MR. HINO:  Your Honor, I'm going to request a

5   sentence somewhere in the midpoint, the mid to the high end

6   of the guidelines, and I'll explain why just briefly.  I

7   know I've talked about this before.  My theory in these

8   departure cases, Your Honor, is that the defendant uses up

9   his credit for assistance just to get to the guideline

10  level that he's at by virtue of the government's motion for

11  downward departure, and that's the way I do it.  I will

12  like to keep it pure that way in that I don't try to set

13  these things up so that the sentence I'm looking for is the

14  minimum of the guideline level that the defendant goes to.

15  And I think that's the way it should be because --

16         THE COURT:  I don't always after granting a

17  motion for downward departure feel that the lowest point on

18  the guideline range is necessarily appropriate.  So, if

19  that's your concern --

20         MR. HINO:  Okay.  Well -- okay.  With that in

21  mind let me tell you why I'm requesting a sentence from the

22  mid to the high point.  The thing that stands out about

23  this case, Your Honor, is that the defendant has a criminal

24  history of 25.  That's the highest criminal history I've

25  seen before.  You only need 13 to be a criminal history 6.

26

1   And so the application of the career offender guideline

2   here didn't really do too much for the defendant because

3   that kicks any offender up from criminal history 1, 2, 3,

Page 22

000444A.TXT

4    4, 5 to a 6.  But in this case the defendant walks in the

5    door with a criminal history of 25, which is just

6    extraordinary.

7            The other thing that really just leaps out in

8    this case is the fact that the defendant was sentenced to

9    an extended term over in state court.  I was a prosecutor

10   more than 10 years in that system, and I had a handful of

11   people only that were ever sentenced to an extended term

12   there.  That's their equivalent of the career offender

13   statute.  And so the defendant was sentenced in 1993 to a

14   20-year sentence in state court instead of a 10-year

15   sentence.

16           THE COURT:  But he only served five.

17           MR. HINO:  Well, that's the problem, Your Honor.

18   That's why he's here.  He was sentenced there.  He got out

19   only in five years.  That's the big problem there.  And the

20   significant thing is that he failed to profit from that

21   experience.  He was already sentenced to 20 years before,

22   and he should have learned from that.

23           In all of those prior offenses he was convicted

24   for either possessing or selling fairly small quantities of

25   drugs.  In this particular case at paragraph 24 the

                                                        27

1    probation office is holding the defendant accountable

2    through both the offense conduct and relevant conduct for

3    224 grams of cocaine base.  That's just an extraordinary

4    amount.  If you think of all of the cases that come before

5    the court, I mean we see a lot of powder cocaine, we see a

6    lot of ice.  But in this case we have more than 200 grams

7    of cocaine base.  That would just be right off the scale in

000444A.TXT

8   terms of the drug quantity levels.

9          So I'm requesting a range somewhere on again from

10  the mid to the high.  And the reason I'm not just saying on

11  the high is because I believe that the defendant should be

12  given some credit again for some of the other factors that

13  Mr. Pafundi has raised; so that's why I'm not asking for

14  the very high end.  Certainly, some of the factors that he

15  has raised have not been completely factored into the

16  government's motion for downward departure, and I recognize

17  that.  But I just can't see how you could go on the low end

18  for someone who's already been sentenced to the maximum

19  punishment for doing something less over in the state

20  system, and then he did it again over here 10 times as

21  worse.  So that's the government's recommendation, Your

22  Honor.

23          THE COURT:  Okay.  Well, what I'm going to do is

24  I will state a proposed sentence with my reasons.  I will

25  also state the conditions that you have to follow.  You can


28

1  stay seated.  This is going to take a while.

2          And then I'll check with the two lawyers to see

3  if they have a legal challenge to what I propose.  If they

4  agree that my sentence, as proposed, falls within the law,

5  then I'll sentence you the way I proposed.

6          So here is the proposed sentence:

7          A period in custody of 140 months as to each of

8  counts 1 and 3, both terms to be served concurrently,

9  followed by supervised release of eight years as to each of

10  counts 1 and 3, both terms to be served concurrently.  No

11  fine, but you must pay a special assessment of $200, which

Page 24

000444A.TXT

12    is a hundred dollars for each of the two counts.

13          You have to follow these conditions:

14          Number 1.  You have to follow all of the standard

15    conditions of supervised release when you are out of

16    prison.

17          Number 2.  You cannot commit any crimes, federal,

18    state, or local.

19          Number 3.  You cannot have any illegal controlled

20    substance.

21          Number 4.  You cannot unlawfully use a controlled

22    substance.  Within 15 days of getting out of prison you

23    have to have a drug test.  After that you have to have at

24    least two more drug tests as directed by the probation

25    office.

29

1           Number 5.  Apart from whatever treatment you

2     receive in prison, when you're on supervised release, you

3     have to participate in a substance abuse program, and that

4     can include drug testing directed by the probation office.

5           Number 6.  You cannot have a firearm.

6           Number 7.  You cannot have any illegal or

7     dangerous weapon.

8           Number 8.  You have to allow yourself, the place

9     you live, the place you work, and your vehicle to be

10    searched by the probation office at a reasonable time and

11    in a reasonable manner if the probation office has a

12    reasonable suspicion that you have contraband, some kind of

13    illegal matter, or that there is evidence that you have

14    violated a condition of your supervised release.

15          If you don't allow the search, your supervised

Page 25

000444A.TXT

16  release can be revoked, and you may receive more time in

17  prison.  You have to warn people you live with that the

18  home may be searched because of this condition.

19          Number 9.  Unless you first get permission from

20  the probation office, you cannot go into what is called the

21  Operation Weed and Seed target area.  This is the area it's

22  part of downtown Honolulu.  Its boundaries are Lunalilo

23  Freeway, Nu'uanu Avenue, Bethel Street, Nimitz Highway,

24  North King Street, Dillingham Boulevard, and Kokea Street.

25  You will see a map that is attached to your judgment, and

                                                            30

1  it will show you on the map exactly where you cannot go.

2          Now, here are the reasons that I have stated this

3  sentence:

4          You are now 45 years old.  You pled guilty to

5  count 1, which was possession, with intent to distribute,

6  and distribution of five or more grams of cocaine base, and

7  you also pled guilty to count 3, which charged you with

8  possession with intent to distribute five or more grams of

9  cocaine base.

10          Under the guidelines, given your prior

11  convictions, you are a career offender.  And I also

12  considered the fact that you had accepted responsibility

13  for committing the crimes in this case, and that was all

14  part of my computing the sentencing guidelines.

15          There are a number of things that clearly work

16  against you.  These are called aggravating factors.  You

17  had extensive drug use in your history.  You also have an

18  extensive criminal record, including eight convictions for

19  promoting dangerous drugs in the second degree, promoting

000444A.TXT

20    dangerous drugs in the third degree, unlawful use of drug

21    paraphernalia, and abuse of a household member.  Most of

22    these convictions involved crimes that did occur in this

23    Weed and Seed area, this downtown Honolulu area.

24         Even though you didn't serve as long as you were

25    sentenced for in the state cases, you still had a

31

1    substantial period of being in prison for those previous

2    convictions.  But within two years of getting out of state

3    prison and while still being supervised by the state

4    paroling authorities you went right ahead and you got back

5    into your drug distribution.  All of these factors indicate

6    that you really have not benefitted from earlier contacts

7    with the justice system, and you still pose a danger to the

8    community and, to me, a risk that you may go back into

9    crime.

10         But there are some things that, as you have

11    already seen, have helped you out.  I did grant a downward

12    departure based on your substantial assistance to the

13    government.  That was the subject of Mr. Hino's motion.

14    And I went down six levels after hearing the nature of your

15    cooperation and the nature of the assistance it provided

16    and also the danger that you yourself had to endure in

17    light of that cooperation.  And, given those factors, I did

18    depart downward and for those reasons went down six levels

19    to reflect the extent of your cooperation.

20         You had moved yourself for downward departure,

21    but I did not find that the issues raised by you

22    sufficiently distinguished you from other defendants who

23    have committed the crimes you have committed to, on the

Page 27

000444A.TXT

24    record before me, warrant a downward departure, and so I

25    did deny that motion.   But I am taking into account, in

32

1    selecting the low end of the guideline range in my proposed

2    sentence, the considerable hardship you have had,

3    particularly with respect to being assaulted by another

4    inmate, which was not something that anyone here had

5    contemplated and is not something that was taken into

6    account in the government's motion.   And so I do want to --

7    I do think that is an appropriate matter that I should

8    consider in determining where in the guideline range your

9    sentence should fall.

10          I will also note that, although you do have

11    extensive drug distribution history and convictions, those

12    did involve in the state cases the sale of user amounts of

13    cocaine.   I'm also aware that even at the low end it is

14    still a significant sentence, still a very long sentence.

15          And so for all of those reasons I have proposed

16    this sentence.

17          Okay.  Let me check first with Mr. Pafundi.   Is

18    there a legal challenge to the sentence as proposed?

19          MR. PAFUNDI:   No, there is not, Your Honor.

20          THE COURT:   Mr. Hino?

21          MR. HINO:   No, Your Honor.

22          THE COURT:   Then I am now sentencing you, Mr.

23    Faitau, exactly as you heard me propose.   You are now

24    sentenced to 140 months in custody for each of counts 1 and

25    3, with both of these terms to be served concurrently.

33

000444A.TXT

1   That is followed by eight years of supervised release as to

2   each of counts 1 and 3, with both terms to be served

3   concurrently.  During your supervised release you must

4   follow all of the conditions you heard me state with my

5   proposal.  There is no fine, but you must pay a special

6   assessment of $200, which is a hundred dollars per count.

7   And I am imposing this sentence for the reasons you heard

8   me state with my proposed sentence.

9           If you would like to challenge any part of this

10  sentence, you should talk to Mr. Pafundi right away.  If

11  you are going to be filing an appeal, you only have 10 days

12  in which to take that appeal.

13          Are there any requests by the defense as to the

14  facility that Mr. Faitau would be designated to or any

15  programs?  My thought is that he would be a good candidate

16  for me to recommend to the Bureau of Prisons for the

17  500-hour comprehensive drug treatment program.

18          MR. PAFUNDI:  Yes, that would be good.  We would

19  recommend that also.

20          THE COURT:  Okay.

21          MR. PAFUNDI:  In addition, he would request that

22  he be housed at the Sheridan facility.

23          THE COURT:  Sheridan?  And the reason for that

24  request?

25          MR. PAFUNDI:  It's on the west coast.  It's as

                                                          34

1   close to his one-year-old son as he's going to get,

2   apparently.  And it's a medium security facility, I

3   understand, and in light of his career-offender status they

                        Page 29

000444A.TXT

4   may be able to accommodate him in circumstances where he's

5   not locked up as a career offender on a regular basis.

6           THE COURT:  Are there other -- any other programs

7   that you would like to request?

8           I think I should probably say he might need

9   medical treatment just in case -- although, I'm not certain

10  that would be -- I don't have anything on the record to

11  indicate some long-term extraordinary services but probably

12  a good idea that he be checked out.

13          MR. PAFUNDI:  Yes, Your Honor.  And vocational

14  programs, of course, if they have that available.

15          THE COURT:  All right.  I will recommend these,

16  but I cannot guaranty you any program.  I cannot guaranty

17  you any specific facility.  As far as drug treatment, that

18  usually occurs when you're about nearing the end of your

19  sentence is when it would occur, if you are given a chance

20  by the Bureau of Prisons to participate in such a program.

21          Okay.  Is there anything further?

22          MR. HINO:  Just one thing, Your Honor.  I put in

23  a call to Mr. Kalima at the Marshal's Office to request

24  that the defendant be returned to Kern County for the time

25  being.  And I mentioned this both to Mr. Faitau and to Mr.

35

1   Pafundi.  And the reason I've made that request is because

2   I did receive a call from the prosecutor there, and the

3   defendant's trial in which he is the victim is going to

4   start on July 23d.  So I don't believe there are any

5   objections from the defense.

6           THE COURT:  No objections?

7           THE DEFENDANT:  No.

000444A.TXT

8          MR. PAFUNDI:  There is no objection, Your Honor.

9    Now, he was hoping that he could stick around here in

10   Hawai'i for any parole violation hearings that may ensue as

11   a result of this sentencing; so he is going to sacrifice

12   that request at the request of the government to have him

13   be brought back to Kern County as soon as possible, take

14   care of those matters, which are a priority.

15          THE COURT:  Okay.  So I'll request that the

16   United States marshals arrange to send this defendant back

17   to Kern County because he will have to be a witness in an

18   upcoming federal trial that is close to that location, and

19   so you are likely to be shipped out to Kern County

20   shortly.

21          Okay.  I take it that the measures will be

22   imposed so that Mr. Faitau is not exposed to the person who

23   attacked him, who may also be housed at Kern County for the

24   trial?  Is that situation --

25          MR. HINO:  Well, I'm going to mention that to Mr.

                                                        36

1    Kalima.  I'm sure they're taking that into consideration,

2    too.

3          THE COURT:  I mean we want to make sure that we

4    do everything in our power to avoid any follow-up on that.

5          Okay.  Thank you very much.

6          MR. PAFUNDI:  Thank you.

7          MR. HINO:  Thank you, Your Honor.

8          PROBATION OFFICER:  Your Honor, perhaps I wasn't

9    paying attention, but did Your Honor advise the defendant

10   of his right to appeal?

11          THE COURT:  Ten days.  Yes, I did.

                        Page 31

000444A.TXT
12          PROBATION OFFICER:  I wasn't paying attention.

13          THE COURT:  That's all right.  Have I left

14   anything else out?

15          PROBATION OFFICER:  No.

16          THE COURT:  Okay.  Thank you very much.

17      (Court recessed at 11:03 A.M.)

18

19

20

21

22

23

24

25



1              COURT REPORTER'S CERTIFICATE

2          I, Debra Kekuna Chun, Official Court Reporter,

3    United States District Court, District of Hawaii, do hereby

4    certify that the foregoing is a correct transcript from the

5    record of proceedings in the above-entitled matter.

6          DATED at Honolulu, Hawaii, February 20, 2002.

7

8                              _____

9                              DEBRA KEKUNA CHUN

10                             CSR 113, RPR

11

12

13

14

15

000444A.TXT

16
17
18
19
20
21
22
23
24
25